**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**ALEXIS A. LIEN, OSB #110569**
alexis.lien@usdoj.gov
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 3:19-cv-01999-BR |
| v. | |
| $6,332.00 IN UNITED STATES CURRENCY, *in rem*, | COMPLAINT *IN REM* FOR FORFEITURE |
| Defendant. | |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Alexis A. Lien, Assistant United States Attorney, for its Complaint *in rem* for forfeiture, alleges:

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendant, *in rem*, $6,332.00 in United States currency, was seized in the District of Oregon, and is now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendant, *in rem*, $6,332.00 in United States currency, represents proceeds traceable to an exchange for controlled substances or was used or intended to be used to facilitate such a transaction in violation of 21 U.S.C. § 801, *et. seq.*, and is forfeitable to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(6), as more particularly set forth in the Declaration of Special Agent Ryan E. Parton, Federal Bureau of Investigation, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, Plaintiff, United States of America, prays that due process issue to enforce the forfeiture of Defendant, *in rem*, $6,332.00 in United States currency; that due notice be given to all interested persons to appear and show cause why forfeiture of this Defendant, *in rem*, should not be decreed; that due proceedings be had thereon; that this Defendant be forfeited to the United States; that the Plaintiff United States of America be awarded its costs and disbursements incurred in this action.

Dated: December 10, 2019.

                                        Respectfully submitted,

                                        BILLY J. WILLIAMS
                                        United States Attorney

                                        */s/ Alexis A. Lien*
                                        ALEXIS A. LIEN
                                        Assistant United States Attorney

## VERIFICATION

I, RYAN E. PARTON, declare, under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with the Federal Bureau of Investigation and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

*/s/ Ryan E. Parton*
**RYAN E. PARTON**
Special Agent
Federal Bureau of Investigation

# DECLARATION OF RYAN E. PARTON

I, Ryan E. Parton, do hereby declare:

## PURPOSE OF THIS DECLARATION

1. This declaration is submitted in support of a complaint for forfeiture. The information contained in this declaration is based on an investigation conducted by Federal Bureau of Investigation Special Agent Ryan E. Parton, which will show that $6,332.00 in U.S. currency seized from Cordiere Williams (hereinafter "Williams") at the Portland International Airport is subject to forfeiture pursuant to 21 U.S.C § 881(a)(6), as moneys furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate violations of 21 U.S.C. § 801, *et. seq*. Information contained in this declaration is based upon my personal observations, training, and experience, and that of other law enforcement officers. This declaration does not contain each and every fact that I know about this investigation, only those necessary to establish probable cause to believe the seized currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## AGENT BACKGROUND AND TRAINING

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since July 2012. As a Special Agent with the FBI, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. I am currently assigned to the Portland Regional Organized Crime and Drug Task Force (PDX-TF). PDX-TF is a coordinated effort by local and federal law enforcement officials to reduce illegal drug trafficking and related crimes in the Portland metropolitan area, specifically those areas directly related to air

transportation.

3.      Between July of 2012 and December of 2012, I received extensive training at the FBI Academy, Quantico, Virginia, which included topics related to the methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; the use of wiretaps; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits; the use of assets to facilitate unlawful drug trafficking activity; the laws permitting forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate drug trafficking offenses; and money laundering investigations. I have become familiar with the types and amounts of profits made by dealers and distributors of controlled substances, and the methods, language, and terms which are used to disguise the source and nature of the profits from their illegal drug trafficking. I have received additional formal training from the Oregon Narcotics Enforcement Association (ONEA), the International Narcotics Investigations Association (INIA), and the El Paso Intelligence Center's JETWAY Interdiction Training program, which all focused on drug and bulk cash smuggling occurring within mass transportation systems.

4.      Prior to being employed with the FBI, I was employed by the City of Cheyenne, Wyoming as a Police Officer for approximately seven years. During that time, I obtained a Professional Peace Officer certification through the Wyoming Police Officer's Standards Board. To obtain this certification I was required to complete over 1,000 hours of law enforcement training. This training included, but was not limited to, legal process, narcotics investigations, narcotics identification, narcotics interdiction techniques, and interview and interrogation techniques.

**Declaration of Ryan E. Parton**                                            **EXHIBIT A  PAGE 2**

5.  I have participated in numerous narcotics investigations and search warrants seeking evidence of violations of Title 21 and Title 18 of the United States Code and violations of Chapter 475 (Controlled Substances) of the Oregon Revised Statutes (ORS). These warrants covered the search of locations to include: electronic communication devices; residences of drug traffickers and their co-conspirators/associates; drug manufacturing operations; and stash houses used as storage and distribution points for controlled substances and/or drug trafficking proceeds.

## BACKGROUND ON NARCOTICS PROCEEDS TRANSPORTED THROUGH AIRPORTS

6.  I know from my training and experience that drug traffickers transporting narcotics proceeds will frequently use airports to transport proceeds to a source city in order to purchase controlled substances, including marijuana, cocaine, heroin and methamphetamine. I know from my training and experience that subjects trafficking narcotics proceeds often use airports to transport proceeds because of the speed of travel, the ability to maintain custody of the proceeds, and the low detection rate by law enforcement. I know from training and discussions with other law enforcement officers that these controlled substances and proceeds of the illegal sale of controlled substances are often found during airport interdictions.

7.  Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know Oregon is a marijuana source state for controlled substances to destination locations across the United States. Current Oregon state laws permitting the recreational and medical growth, purchase, and possession of marijuana provide individuals with significant quantities of marijuana, which can be illegally shipped to other states where marijuana is illegal or less available in order to derive substantially increased profits.

8. Based on my experience, training and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators exist when drug traffickers book airline travel for the purpose of purchasing narcotics. These travel indicators are inconsistent with normal travel and would only be justified under extraordinary circumstances.

9. I know from my training and experience that drug traffickers will book their airline travel the same day or several days before their travel. This is often done because the availability of narcotics and narcotics proceeds changes on short notice. Drug traffickers have narrow windows to conduct drug transactions when a source of supply obtains narcotics; otherwise the source will find another buyer. I also know drug traffickers will often pay cash for their plane tickets to avoid traceability through credit card transactions.

10. I know from my training and experience that drug traffickers will book one-way travel or have short turn around flights. This is commonly done because drug traffickers are delivering narcotics proceeds to their source of supply (and do not require a lot of time at their destination) or the drug trafficker is planning on transporting the purchased narcotics by car/train back to their originating city.

12. I know from my training and experience that, when contacted by law enforcement, drug traffickers carrying narcotics proceeds will be deceptive about the amount of currency they are carrying. Drug traffickers usually underestimate or are evasive about the quantity of the currency they are carrying because they are aware law enforcement can seize narcotics proceeds. Drug traffickers usually believe that if they are in possession of a lesser amount of currency that it is less likely to be seized by law enforcement. It is common for drug traffickers carrying narcotics

proceeds to change their statements regarding the amount of currency that they are carrying several times.

## SUMMARY OF INVESTIGATION

13. On May 8, 2019, Task Force Officers (hereinafter "TFO") and Agents of the Portland Regional Drug and Organized Crime Task Force (hereinafter "PDX-TF") were conducting standard interdiction operations at Portland International Airport. This specific interdiction operation focused on passengers who arrived on United Airlines flight 1938, which originated in Houston, Texas and arrived in Portland, Oregon at approximately 1:15 p.m.

14. During this operation, PDX-TF TFO Timothy Osorio and I were dressed in civilian clothing. Multnomah County Sheriff's Office K9 Deputy Kevin Jones was also wearing civilian clothing but openly displayed his department issued "Deputy Sheriff" badge. Deputy Jones' police K9 "Blaze" also wore a vest which prominently displayed "Sheriff's K9."

15. TFO Osorio observed a male subject leaving arrival gate E3. The male subject, later identified as Williams, was traveling with a backpack. As the subject got closer to TFO Osorio and Deputy Jones, TFO Osorio asked if he would allow K9 "Blaze" to sniff his backpack. Williams had earphones on, and appeared to not hear what TFO Osorio asked. TFO Osorio waived his hand in the direction of where Williams was walking, at which point he removed his earphones. TFO again asked Williams if K9 "Blaze" could sniff the backpack Williams was wearing. Williams stated that was fine, and he proceeded to unzip his backpack and place it on the ground. Deputy Jones proceeded to have his K9 sniff Williams' backpack.

16. As this was occurring, TFO Osorio asked Williams where he was traveling from. He stated he was traveling from Houston, he was just visiting, and that he was only going to be in

**Declaration of Ryan E. Parton**                                                                              **EXHIBIT A   PAGE 5**

Portland for a couple of days. TFO Osorio was advised by Deputy Jones that his K9 had alerted to the odor of narcotics emanating from Williams' bag.

17. Deputy Jones' official police report states the following:

During the course of this particular deployment I observed K-9 Blaze sniff approximately 10 bags as we stood near the E-Concourse exit within PDX. Detective Osorio asked a passenger later identified as Williams if my K-9 could sniff his backpack and Williams consented and unzipped the backpack without us making that request and set it on the ground. I deployed K-9 Blaze on the backpack and he alerted, I then paid the dog with his toy and began to play with him.

18. TFO Osorio explained to Williams that the K9 had alerted to the presence of narcotic odor coming from his backpack. TFO Osorio asked Williams if he would accompany him to a nearby seating area, located at the D and E Security Checkpoint. Williams stated that was fine. As Williams and TFO Osorio proceeded to the seating area, TFO Osorio identified himself as a law enforcement officer, and explained to Williams the nature of the contact.

19. TFO Osorio asked if the backpack Williams was traveling with belong to him. Williams stated it did. When asked, Williams stated he was not traveling with any contraband or narcotics. Williams also stated he was not transporting a package or parcel for someone else. Williams was not travelling with any checked luggage items.

20. TFO Osorio asked for consent to examine the contents of Williams' backpack. Williams provided verbal consent and proceeded to open his backpack. Williams placed his backpack on the table and appeared to be moving or retrieving something from inside of the backpack. As Williams was doing this, TFO Osorio asked him if he was traveling with a large amount of currency. Williams stated "I have money." Williams refused to answer any further questions about the amount of money he had in his possession. Williams did state "You are not getting my money." Williams then retrieved a shoe from his backpack, and removed a large stack

**Declaration of Ryan E. Parton**                                   **EXHIBIT A PAGE 6**

of United States currency, in what appeared to be denominations of $100 bills, from inside of the shoe. Williams then placed the stack of currency in his pants pocket in a rapid manner. I know from training and experience that individuals involved in the smuggling of currency for the purchase of contraband or narcotics many times place large amounts of currency within clothing items in attempt to conceal the currency from authorities.

21. I know that Oregon has an abundance of bulk black market marijuana that is sold to individuals from others states across the country for large profits. I know that many of these illegal transactions occur with the use of cash in an attempt to avoid reporting requirements from financial institutions. Many times pictures of bulk cash are sent to illegal bulk marijuana sources as proof of payment. I have contacted several individuals at PDX who have traveled to Portland, OR with bulk cash smuggled within their clothing items and shoes, who intended to purchase black market marijuana and/or marijuana products. I have also contacted individuals traveling through PDX with United States currency that was obtained via legitimate means, and was intended to be used for legitimate means. During these contacts, the cash was usually kept in a bank issued envelope or zippered bag, and the passenger was able to provide documentation for the cash he or she was traveling with.

22. While TFO Osorio continued to talk to Williams, Williams became further agitated. Williams then stood up and fled on foot towards the E concourse. Williams left his backpack on the table at the time he ran. However, he kept with him the money he had earlier retrieved from his shoe. Williams was pursued by law enforcement officers and was later apprehended by law enforcement officers trying to leave the airport via the Tri-Met rail station. However, while fleeing, Williams pushed down and caused injury to a bystander and attempted to unlawfully enter

a stranger's vehicle at PDX's departures area. Once in custody, Williams was escorted to the Port of Portland Police Department.

23. Williams was later interviewed by TFO Osorio and TFO Lance Hemsworth. THE TFOs advised Williams of his Miranda rights. TFO Osorio inquired about the nature of Williams' trip to Portland. During the interview Williams stated that he had purchased a one-way ticket the previous day, and paid approximately $550 for his plane ticket. Williams stated he was unsure how long he was planning to stay in Portland, however he was planning on flying to Las Vegas from Portland. TFO Osorio asked Williams if he had purchased his airfare to Las Vegas already. He stated he had not. Williams was also unable to explain the nature of his trip to Portland or where he was staying.

24. I know from training and experience that individuals traveling to Oregon, who are involved in the black market marijuana business, many times travel last minute and stay only as long it is needed to conduct their illegal transaction. This happens because they receive notification that the marijuana product is ready to be purchased and exported out of the state.

25. When asked about the origin of the currency in his possession, Williams was unable to provide a source of funds, or what he intended to purchase with the money. In addition, Williams stated he currently was unemployed and the last time he worked was "a couple months ago." Williams denied investigators consent to search his cell phone.

26. Williams' criminal history was queried and revealed several arrests in Texas for evading arrest, and a recent arrest for possession of marijuana.

///

///

**Declaration of Ryan E. Parton**                                                                     **EXHIBIT A    PAGE 8**

## CONCLUSION

27. Based on the foregoing information, I have probable cause to believe, and do believe, that the $6,332 in U.S. currency seized from Cordiere Williams is subject to forfeiture pursuant to 21 U.S.C. §881(a)(6), as moneys furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate violations of 21 U.S.C § 801, *et. seq.*

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 10th day of December 2019.


*/s/ Ryan E. Parton*
RYAN E. PARTON
Special Agent
Federal Bureau of Investigation

≋JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ❒ 1   U.S. Government Plaintiff
- ❒ 2   U.S. Government Defendant
- ❒ 3   Federal Question (U.S. Government Not a Party)
- ❒ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❒ 610 Agriculture | ❒ 422 Appeal 28 USC 158 | ❒ 400 State Reapportionment |
| ❒ 120 Marine | ❒ 310 Airplane | ❒ 362 Personal Injury - Med. Malpractice | ❒ 620 Other Food & Drug | ❒ 423 Withdrawal 28 USC 157 | ❒ 410 Antitrust |
| ❒ 130 Miller Act | ❒ 315 Airplane Product Liability | ❒ 365 Personal Injury - Product Liability | ❒ 625 Drug Related Seizure of Property 21 USC 881 | | ❒ 430 Banks and Banking |
| ❒ 140 Negotiable Instrument | ❒ 320 Assault, Libel & Slander | ❒ 368 Asbestos Personal Injury Product Liability | ❒ 630 Liquor Laws | **PROPERTY RIGHTS** | ❒ 450 Commerce |
| ❒ 150 Recovery of Overpayment & Enforcement of Judgment | ❒ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ❒ 640 R.R. & Truck | ❒ 820 Copyrights | ❒ 460 Deportation |
| ❒ 151 Medicare Act | ❒ 340 Marine | ❒ 370 Other Fraud | ❒ 650 Airline Regs. | ❒ 830 Patent | ❒ 470 Racketeer Influenced and Corrupt Organizations |
| ❒ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❒ 345 Marine Product Liability | ❒ 371 Truth in Lending | ❒ 660 Occupational Safety/Health | ❒ 840 Trademark | ❒ 480 Consumer Credit |
| ❒ 153 Recovery of Overpayment of Veteran's Benefits | ❒ 350 Motor Vehicle | ❒ 380 Other Personal Property Damage | ❒ 690 Other | | ❒ 490 Cable/Sat TV |
| ❒ 160 Stockholders' Suits | ❒ 355 Motor Vehicle Product Liability | ❒ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ❒ 810 Selective Service |
| ❒ 190 Other Contract | ❒ 360 Other Personal Injury | | ❒ 710 Fair Labor Standards Act | ❒ 861 HIA (1395ff) | ❒ 850 Securities/Commodities/ Exchange |
| ❒ 195 Contract Product Liability | | | ❒ 720 Labor/Mgmt. Relations | ❒ 862 Black Lung (923) | ❒ 875 Customer Challenge 12 USC 3410 |
| ❒ 196 Franchise | | | ❒ 730 Labor/Mgmt.Reporting & Disclosure Act | ❒ 863 DIWC/DIWW (405(g)) | ❒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❒ 740 Railway Labor Act | ❒ 864 SSID Title XVI | ❒ 891 Agricultural Acts |
| ❒ 210 Land Condemnation | ❒ 441 Voting | ❒ 510 Motions to Vacate Sentence | ❒ 790 Other Labor Litigation | ❒ 865 RSI (405(g)) | ❒ 892 Economic Stabilization Act |
| ❒ 220 Foreclosure | ❒ 442 Employment | **Habeas Corpus:** | ❒ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ❒ 893 Environmental Matters |
| ❒ 230 Rent Lease & Ejectment | ❒ 443 Housing/ Accommodations | ❒ 530 General | | ❒ 870 Taxes (U.S. Plaintiff or Defendant) | ❒ 894 Energy Allocation Act |
| ❒ 240 Torts to Land | ❒ 444 Welfare | ❒ 535 Death Penalty | **IMMIGRATION** | ❒ 871 IRS—Third Party 26 USC 7609 | ❒ 895 Freedom of Information Act |
| ❒ 245 Tort Product Liability | ❒ 445 Amer. w/Disabilities - Employment | ❒ 540 Mandamus & Other | ❒ 462 Naturalization Application | | ❒ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ❒ 290 All Other Real Property | ❒ 446 Amer. w/Disabilities - Other | ❒ 550 Civil Rights | ❒ 463 Habeas Corpus - Alien Detainee | | ❒ 950 Constitutionality of State Statutes |
| | ❒ 440 Other Civil Rights | ❒ 555 Prison Condition | ❒ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ❒ 1 Original Proceeding
- ❒ 2 Removed from State Court
- ❒ 3 Remanded from Appellate Court
- ❒ 4 Reinstated or Reopened
- ❒ 5 Transferred from another district (specify)
- ❒ 6 Multidistrict Litigation
- ❒ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ❒ Yes   ❒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE